UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| BRANDI SCHAUBERT | CIVIL ACTION NO. 6:19-0917 |
| VERSUS | JUDGE JUNEAU |
| LOUIS ACKAL | MAG. JUDGE WHITEHURST |

## REPORT AND RECOMMENDATION

Before the undersigned, on referral from the district judge, is the Motion to Dismiss Health Care Claims [Doc. 4] filed by defendant Louis Ackal, who has been sued in his official capacity as the Sheriff of Iberia Parish. The motion is opposed by plaintiff Brandi Schaubert ("plaintiff") [Doc. 12], and defendant filed a Reply brief [Doc. 15]. For the following reasons, it is RECOMMENDED that the Motion to Dismiss be DENIED.

### I.  FACTUAL BACKGROUND

The instant lawsuit arises from the confinement of the plaintiff in the Iberia Parish Jail following a pedestrian/automobile collision on July 16, 2018. On that date, the plaintiff was walking with a companion on the shoulder of Louisiana Highway 88 when she was struck from behind by a passing motorist. The plaintiff sustained injuries including, but not limited to, fractures of her left foot, left flank contusions/abrasions, a back injury, and abrasions to her foot and leg. At the scene of the accident, Louisiana State Troopers searched the plaintiff's belongings and

1

found contraband. She was arrested and transported by ambulance to the emergency room at Iberia Medical Center, where she was treated and released for incarceration.

The plaintiff alleges that upon her release from the emergency room at Iberia Medical Center, her broken left foot was splinted, she was provided crutches, and was instructed to use crutches, keep the splint dry, and follow up with her primary care provider within 24-48 hours. The plaintiff also alleges that she suffers from a history of mental illness, including bipolar 1 disorder, borderline personality disorder, and anxiety for which psychotropic medication was necessary to treat.

The plaintiff was confined in the jail from July 16, 2018 until September 6, 2018. During her period of confinement, the plaintiff alleges that she was not allowed to use a wheelchair and/or crutches and was told neither could not be found. She was also forced to shower, resulting in the exposure of her splint and open wounds to water. As a result, she alleges that splint on her left foot only lasted for about one week, and that thereafter, she was forced to walk on her un-splinted, broken foot, without crutches or other assistance. The plaintiff also alleges that she was forced to shower with open wounds on her left foot, in a shower basin previously utilized by another female inmate who was positive for HIV (human immunodeficiency virus), who had left a trail of menstruation/blood. The plaintiff alleges the jail's showers were not sanitized or cleaned, and female inmates were not provided with feminine products, including tampons.

The plaintiff filed the instant lawsuit on July 16, 2019, alleging violations of her constitutional rights as authorized by 42 U.S.C.§1983, as well as violations of state law. The only defendant sued is Louis Ackal, in his official capacity as the Sheriff of Iberia Parish, for civil rights violations and for negligence in the following particulars: negligent hiring, supervision, and training of deputies; negligent failure to maintain the Iberia Parish Jail properly and in failing to ensure necessary accommodations for persons with disabilities, injuries and illnesses; negligent failure to provide necessary feminine products to prisoners; and negligent denial of reasonable medical care under the premises. The plaintiff alleges that Sheriff Ackal acted with deliberate indifference with respect to all of the foregoing actions/inactions. Although the plaintiff fails to identify which specific constitutional right(s) was violated, she alleges the defendant caused her to suffer "cruel and unusual punishment at a time when she was presumed innocent."

In the instant motion to dismiss, defendant moves to dismiss certain claims asserted against him on grounds that he, as the operator of the Iberia Parish Jail, cannot be held liable for the alleged failures to provide necessary and adequate health care during the plaintiff's incarceration. Defendant therefore seeks dismissal with prejudice of the plaintiff's claims against him for failure to provide proper and adequate health care.

## II.   LAW AND ANALYSIS

### A. Legal Standard

To survive a Rule 12(b)(6) motion to dismiss, the plaintiffs must plead enough facts "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007)). A claim is facially plausible when the plaintiff pleads facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at 1949. A court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff. *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 232–33 (5th Cir.2009); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir.1996). But the Court is not bound to accept as true legal conclusions couched as factual allegations. *Iqbal*, 129 S.Ct. at 1949–50.

A legally sufficient complaint must establish more than a "sheer possibility" that plaintiffs' claim is true. *Id.* It need not contain detailed factual allegations, but it must go beyond labels, legal conclusions, or formulaic recitations of the elements of a cause of action. *Twombly*, 550 U.S. at 555. In other words, the face of the complaint must contain enough factual matter to raise a reasonable expectation that discovery will reveal evidence of each element of the plaintiffs' claim. *Lormand*, 565 F.3d at 255–57. If there are insufficient factual allegations to raise a right to relief above the speculative level, *Twombly*, 550 U.S. at 555, or if it is apparent from

the face of the complaint that there is an insuperable bar to relief, *Jones v. Bock*, 549 U.S. 199, 215 (2007); *Carbe v. Lappin*, 492 F.3d 325, 328 & n. 9 (5th Cir.2007), the claim must be dismissed.

**B. Analysis**

The Fifth Circuit has recognized that Section 1983 claims against public officials are subject to a heightened pleading requirement; a plaintiff is required to assert "claims of specific conduct and actions giving rise to a Constitutional violation." *Baker v. Putnal,* 75 F.3d 190, 195 (5th Cir.1996). "State officers are subject to [Section] 1983 liability for damages in their personal capacities ... even when the conduct in question relates to their official duties." *Arizonans for Official English,* 520 U.S. at 69 n. 24, 117 S.Ct. 1055, *citing Hafer,* 502 U.S. at 25–31, 112 S.Ct. 358), *cited in Yul Chu v. Mississippi State Univ.*, 901 F. Supp. 2d 761, 776 (N.D. Miss. 2012), *aff'd*, 592 F. App'x 260 (5th Cir. 2014).

Defendant has been sued in his official capacity only, however, the plaintiff does not specifically allege which portions of the constitution the defendant has allegedly violated. Although the plaintiff alleges that she was subjected to cruel and unusual punishment, it is clear that the plaintiff's rights do not stem from the 8th Amendment, but rather arise under the 14th Amendment, as follows:

> Pre-trial detainees possess a clearly established constitutional right to be free from punishment. *See Bell v. Wolfish,* 441 U.S. 520, 534–37, 99 S.Ct. 1861, 1871–73, 60 L.Ed.2d 447 (1979). The Supreme Court has held that a pretrial detainee's claims of unconstitutional conditions of

5

confinement[3] are analyzed under the Fourteenth Amendment's guarantee of due process of law as opposed to the Eighth Amendment's prohibition of cruel and unusual punishment, which applies only to sentenced inmates. *See id.* at 535 n. 16, 99 S.Ct. at 1872 n. 16; *Hare v. City of Corinth,* 74 F.3d 633, 639 (5th Cir.1996).

*Oladipupo v. Austin*, 104 F. Supp. 2d 626, 633 (W.D. La. 2000).

In the context of Section 1983 claims by pretrial detainees, the Fifth Circuit has distinguished between cases challenging specific acts and omissions and those alleging constitutional deprivations by virtue of the general conditions of confinement. See *Hare v. City of Corinth*, 74 F.3d 633, 644 (5th Cir. 1996) (en banc). A conditions of confinement case is a constitutional attack on "general conditions, practices, rules, or restrictions of pretrial confinement." *See id.* In condition cases, the harm is caused by the condition itself. "This is true, for example, where inadequate food, heating, or sanitary conditions themselves constitute miserable conditions." *Scott v. Moore,* 114 F.3d 51, 53 (5th Cir.1997). The Fifth Circuit has concluded that where a pretrial detainee challenges the general conditions of confinement, as opposed to particular acts or omissions, a constitutional violation exists only if the court finds that the conditions of confinement are not reasonably related to a legitimate, non-punitive governmental objective. *See Hare,* 74 F.3d at 640 (citing *Bell,* 441 U.S. at 538–39, 99 S.Ct. at 1873–74); *see also Scott,* 114 F.3d at 53 (citing *Hare*).

In contrast to a conditions of confinement case, where a plaintiff's allegations are based on a particular act or omission of one or more officials, the action is characterized as an "episodic act or omission" case. *See Olabisiomotosho v. City of Houston,* 185 F.3d 521, 526 (5th Cir.1999); *Hare,* 74 F.3d at 645. Where the plaintiff is suing an individual defendant, as opposed to a municipality, for a specific act or omission the plaintiff "'must establish that the official(s) acted with subjective deliberate indifference to prove a violation of [her] constitutional rights.'" *Olabisiomotosho,* 185 F.3d at 526 (citing *Flores v. County of Hardeman,* 124 F.3d 736, 738–39 (5th Cir.1997)). An official acts with subjective deliberate indifference when he "had subjective knowledge of a substantial risk of serious harm to a pretrial detainee but responded with deliberate indifference to that risk." *Hare,* 74 F.3d at 650. Although the Fifth Circuit has carefully distinguished the conditions of confinement cases from those cases arising from a specific act or omission, it has also noted that "the reasonable-relationship test employed in conditions cases is 'functionally equivalent to' the deliberate indifference standard employed in episodic cases." *Scott,* 114 F.3d at 54, citing *Hare,* 74 F.3d at 643.

In this case, the plaintiff's complaint alleges facts challenging both episodic acts of individuals as well as conditions of confinement. She challenges the constitutionality of both the general conditions of confinement – failure to provide clean showers; failure to provide feminine products such as tampons -- and the

7

specific incidents where she was deprived of crutches or a wheelchair; was forced to shower immediately after another detainee showered, leaving menstrual blood in the shower; and denied her medication for her bipolar disorder.

Pretrial detainees have a due process right to reasonable medical care. *Sibley v. Lemaire,* 184 F.3d 481, 489 (5th Cir.1999) (discussing the rights of a pretrial detainee and concluding that the prison had the duty to provide reasonable medical care); *Jones v. St. Tammany Parish Jail,* 4 F.Supp.2d 606, 610 (E.D.La.1998) ("Violation of an inmate's liberty interest in bodily integrity by denying him basic human needs such as reasonable medical care, personal safety, and sanitation can amount to punishment."). The Fifth Circuit has recognized that there is no significant distinction between pretrial detainees and convicted inmates concerning basic human needs such as medical care. *Baughman v. Garcia*, 254 F. Supp. 3d 848, 868–69 (S.D. Tex. 2017), *aff'd sub nom. Baughman v. Seale*, 761 F. App'x 371 (5th Cir. 2019), citing *Gibbs v. Grimmette*, 254 F.3d 545, 548 (5th Cir. 2001) (citing *Hare v. City of Corinth*, 74 F.3d 633, 643 (5th Cir. 1996) (en banc). In other words, the same legal standard governs constitutional claims concerning medical care by pretrial detainees and convicted inmates. *See id.* Thus, precedent decided under the Eighth Amendment, which prohibits deliberate indifference to an inmate's serious medical needs, governs Baughman's claims that he was denied adequate medical and

8

dental care. *Baughman*, 254 F. Supp. 3d at 869, *cited in Oladipupo*, 104 F. Supp. 2d at 636.

In his motion to dismiss, the defendant acknowledges that he is designated by law as the "keeper" of the Parish Jail and has the duty to properly care for, feed and clothe the inmates in his custody, but he argues that the duty of inmate "care" owed by the Sheriff is limited and does not include the duty to provide inmate health care services. Rather, the defendant argues that the duty to provide health care services is statutorily assigned to Iberia Parish under La. Rev. Stat. 15:703. Section 15:703 states:

> A. The governing authority of each parish shall appoint annually a physician who shall attend the prisoners who are confined in parish jails whenever they are sick. His salary shall be fixed by the governing authority. Any physician so appointed shall be licensed as provided in R.S. 37:1271 and shall be a qualified health care provider in accordance with R.S. 40:1231.2.
>
> B. In lieu of appointing a physician, the governing authority of any parish may enter into a contract with a health care provider, licensed or regulated by the laws of this state, to provide requisite health care services, as required in this Section. The term "health care provider" as used in this Subsection means a person, partnership, limited liability partnership, limited liability company, corporation, facility, or institution licensed or regulated by the laws of this state to provide health care services or professional services as a physician and qualified as such in accordance with R.S. 40:1231.2.
>
> C. When a physician has been appointed or a contract for health care services for prisoners has been entered into in accordance with this Section, any action by a prisoner or his representative to recover damages or any other losses, including those for the death of the prisoner, as a result of the actions or inactions of the physician or

9

> health care provider in the performance or nonperformance of health care services shall be governed by the provisions of R.S. 40:1231.1 et seq. The term "health care provider" as used in this Subsection shall be as defined in R.S. 40:1231.1.
>
> D. The sole responsibility of the governing authority of each parish which is mandated by the provisions of this Section with respect to providing health care services for prisoners shall be the appointment of a physician and the payment of the salary of that physician or its contractual obligations with a health care provider selected in accordance with this Section.
>
> E. The parish and its governing authority shall not be liable for any action arising as a result of the actions or inactions of the physician or health care provider, whether ex delicto or ex quasi delicto or ex contractu, by a prisoner or his representative to recover damages or any other losses, including those for the death of the prisoner, unless the governing authority exercises gross negligence or willful misconduct in the performance of its duties and obligations imposed by this Section, and such gross negligence or willful misconduct was a substantial factor in causing the injury.

La. Rev. Stat. §15:703.

In support of his motion, defendant cites *Southwest Louisiana Hospital Association v. Hunt*, 551 So.2d 818, 821 (La. App. 3 Cir. 1989), arguing that "the police jury [is] statutorily responsible for [the inmate's] medical care while he as an inmate in the parish jail." As an initial matter, the undersigned notes *Southwest* is factually inapposite, as the issues in that matter focused on a hospital's suit on open account against a curatrix of a former prisoner for nonpayment of a hospital bill. Here, the court must consider whether the plaintiff states a claim for conditions of

confinement and denial of medical care. The undersigned concludes that the claims alleged by the plaintiff clearly fall under the Fourteenth Amendment.

Specifically, to the extent that the plaintiff claims that the conditions of her confinement violated her Fourteenth Amendment rights, her claims survive the instant motion to dismiss. These claims include her allegations that she was forced to shower in an unclean bathroom and was potentially exposed to HIV from another inmate and that shew was denied access to feminine products, including tampons. The plaintiff also alleges that the Sheriff's failure to properly train and supervise deputies violates her constitutional rights; this claim clearly survives the instant motion. Finally, to the extent that the plaintiff alleges "health care claims," she is alleging that she was *denied access to health care*, not that the health care she received was inadequate in some way. These claims include her allegation that she was denied a wheelchair or crutches; was not provided with her medication; and was forced to shower, getting her splinted leg wet, which caused the splint to come off a week later, which caused injury. To this extent, her claims are directed at the inactions of the Sheriff as the keeper of the jail, not at the health care providers who may have been contracted to provide health care services. Considering the foregoing, the undersigned concludes that the plaintiff states a claim under the standards of Rule 12(b)(6), and the instant motion to dismiss should be denied.

### III. CONCLUSION

Considering the foregoing,

**IT IS RECOMMENDED** that the Motion to Dismiss Health Care Claims [Doc. 4] be DENIED at this time.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen days from service of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen days after being served with a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of its service, or within the time frame authorized by Fed. R. Civ. P 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).

**THUS DONE AND SIGNED** this 7th day of April, 2020 at Lafayette, Louisiana.

CAROL B. WHITEHURST
UNITED STATES MAGISTRATE JUDGE